# EXHIBIT A

## AFFIDAVIT

STATE OF NEW YORK    )
                        : ss.:
COUNTY OF NEW YORK  )

      RUTH HANDLER being duly sworn, says:

      1.     I am a resident of Hauppauge, New York and am over 18 years of age.  I submit this affidavit in support of Plaintiffs' Motion for Class Certification.

      2.     I worked for and was paid by the Charlie Brown's Restaurant located in Commack, New York.

      3.     I worked for Charlie Brown's Restaurant as a Server from November 2004 to October 2006.

      4.     I worked for Charlie Brown's Restaurant as a Manager from October 2006 through January 5, 2010.

      5.     As a Server, I was entitled to receive a share of tips from the customers.

      6.     At the end of my shift every day as a Server, I gave a percentage of my tips to my manager. The manager was supposed to distribute these tips to other employees. On several occasions, the manager kept some of my tips for personal use or to pay restaurant expenses.

      7.     When I worked for Charlie Brown's Restaurant, no more than 80 individuals also worked there.

      8.     My co-workers' job duties were the same, or similar, to my job duties.

      9.     As a Server, I normally worked 5 days a week, for approximately 30 to 40 hours per week.

      10.    When I worked for Charlie Brown's Restaurant as a Server, I was paid a rate of $3.15 per hour for all hours that I worked, plus tips.

      11.    I was usually paid by a payroll check.

      12.    While working at Charlie Brown's Restaurant as a Server I was required to attend meetings approximately every 6 weeks, which lasted between 1 to 2 hours. I did not receive my hourly wages for these meetings.

      13.    My lawyers have advised me that, under the law, my tips should not have been shared with managers and other employees who do not usually receive tips.

      14.    My lawyers have advised me that, under the law, I should have been paid the minimum wage for all hours that I worked.

15.   My co-workers were also not paid the minimum wage for all hours worked, nor were they paid time and one-half their hourly wage for all hours they worked over forty hours in a week. Managers also wrongly kept some of my co-workers' tips.

16.   I know that Charlie Brown's Restaurant did not pay my co-workers all of their wages because sometimes we would discuss and compare our wages to see if we were paid correctly.

17.   When I worked at Charlie Brown's Restaurant as a Manager, upper management told me to "take some of the tipped employees tips and use this money for restaurant expenses."

18.   When I worked at Charlie Brown's Restaurant as a Manager, upper management told me to "keep all tips bartenders were entitled to to pay for bar expense such as refilling liquor supplies."

19.   I knew that taking the tips from tipped employees was wrong. However I was afraid that if I refused to take these tips, I would be fired.

20.   I could not complain because all senior management knew what was occurring and that I was told to take these tips.

21.   I sincerely hope that this Court allows Elizabeth Goff, Cassandra Greene and Martin Tello to represent my interests and the interests of my friends in this action. These companies exploited me and my co-workers, and it is my hope that we will be permitted to recover wages that we are owed.

RUTH HANDLER

Sworn to before me this

_____ day of June 2010

Notary Public

# EXHIBIT B

**AFFIDAVIT**

STATE OF NEW YORK     )
                         : ss.:
COUNTY OF NEW YORK   )

ELIZABETH GOFF being duly sworn, says:

1.     I am a resident of Selden, New York and am over 18 years of age.  I submit this affidavit in support of Plaintiffs' Motion for Class Certification.

2.     I have worked for and was paid by the Charlie Brown's Restaurant located in Commack, New York from approximately October 2007 to the present.

3.     When I worked for Charlie Brown's Restaurant, I worked as a Server.

4.     As a Server, I was entitled to receive a share of tips from the customers.

5.     At the end of my shift every day, I gave a percentage of my tips to the manager. The manager was supposed to distribute a percentage of these tips to other employees. On several occasions, the manager kept some of my tips for personal use or to pay restaurant expenses.

6.     When I worked for Charlie Brown's Restaurant, no less than 80 individuals also worked there.

7.     My co-workers' job duties were the same, or similar, to my job duties, up until 2009.

8.     Up until 2009 I normally worked 3-4 days a week, for approximately 5 to 7 hours per shift. I would sometimes work double shifts. Now I work approximately 2 days a week.

9.     When I worked for Charlie Brown's Restaurant, I was paid a rate of $4.65 per hour for all hours that I worked, plus tips.

10.     I was usually paid by a payroll check.

11.     While working at Charlie Brown's I was required to attend meetings approximately every 6 weeks, which lasted between 1 to 2 hours. I did not receive my hourly wages for these meetings.

12.     Corporate policy provided that Charlie Brown's employees be given a certain number of vacation days based on the number of hours worked. My vacation time was often not given to me and I was not paid any wages for this lost vacation time.

13.     My lawyers have advised me that, under the law, my tips should not have been shared with managers and other employees who do not usually receive tips.

14.     My lawyers have advised me that, under the law, I should have been paid the minimum wage for all hours that I worked.

15.     My co-workers were also not paid the minimum wage for all hours worked, nor were they paid time and one-half their hourly wage for all hours they worked over forty hours in a week.  Managers also wrongly kept some of my co-workers' tips.

16.     I know that Charlie Brown's Restaurant did not pay my co-workers all of their wages because sometimes we would discuss and compare our wages to see if we were paid correctly.

17.     I sincerely hope that this Court allows me, along with Cassandra Greene and Martin Tello, to represent my interests and the interests of my friends in this action.  These companies exploited me and my co-workers, and it is my hope that we will be permitted to recover wages that we are owed.

ELIZABETH GOFF

Sworn to before me this
4th day of June 2010

Notary Public

LAURA BOVE
NOTARY PUBLIC STATE OF NEW YORK
NASSAU COUNTY NO. #01BO6213608
COMM. EXP. 11-16-2012

# EXHIBIT C

**AFFIDAVIT**

STATE OF NEW YORK      )
                                              : ss.:
COUNTY OF NEW YORK  )

CHRISTINA RIECKEHOFF being duly sworn, says:

1.      I am a resident of Hauppauge, New York and am over 18 years of age.  I submit this affidavit in support of Plaintiffs' Motion for Class Certification.

2.      I have worked for and was paid by the Charlie Brown's Restaurant located in Commack, New York from approximately October 2004 to the present.

3.      When I worked for Charlie Brown's Restaurant, I worked as a Server.

4.      As a Server, I was entitled to receive a share of tips from the customers.

5.      At the end of my shift every day, I gave a percentage of my tips to the manager. The manager was supposed to distribute a percentage of these tips to other employees. On several occasions, the manager kept some of my tips for personal use or to pay restaurant expenses.

6.      When I worked for Charlie Brown's Restaurant, no more than 80 individuals also worked there.

7.      My co-workers' job duties were the same, or similar, to my job duties, up until 2009.

8.      Up until 2009 I normally worked 2 days a week, for approximately 5 to 7 hours per shift. I would sometimes work double shifts. When I worked for Charlie Brown's Restaurant, I was paid a rate of $4.65 per hour for all hours that I worked, plus tips.

9.      I was usually paid by a payroll check.

10.     While working at Charlie Brown's I was required to attend meetings approximately every 6 weeks, which lasted between 1 to 2 hours. I did not receive my hourly wages for these meetings.

11.     Corporate policy provided that Charlie Brown's employees be given a certain number of vacation days based on the number of hours worked. My vacation time was often not given to me and I was not paid any wages for this lost vacation time.

12.     My lawyers have advised me that, under the law, my tips should not have been shared with managers and other employees who do not usually receive tips.

13.     My lawyers have advised me that, under the law, I should have been paid the minimum wage for all hours that I worked.

14.    My co-workers were also not paid the minimum wage for all hours worked, nor were they paid time and one-half their hourly wage for all hours they worked over forty hours in a week.  Managers also wrongly kept some of my co-workers' tips.

15.    I know that Charlie Brown's Restaurant did not pay my co-workers all of their wages because sometimes we would discuss and compare our wages to see if we were paid correctly.

16.    I sincerely hope that this Court allows Elizabeth Goff, Cassandra Greene and Martin Tello to represent my interests and the interests of my friends in this action.  These companies exploited me and my co-workers, and it is my hope that we will be permitted to recover wages that we are owed.

CHRISTINA RIECKEHOFF

Sworn to before me this
4th day of June 2010

Notary Public

LAURA BOVE
NOTARY PUBLIC STATE OF NEW YORK
NASSAU COUNTY, LIC. #01BO6213596
COMM. EXP. 10-10-2012

# EXHIBIT D

**AFFIDAVIT**

STATE OF NEW YORK    )
                                      : ss.:
COUNTY OF NEW YORK  )

PATRICIA ROTELLI being duly sworn, says:

1.      I am a resident of East Elmhurst, New York and am over 18 years of age.  I submit this affidavit in support of Plaintiffs' Motion for Class Certification.

2.      I have worked for and was paid by the Charlie Brown's Restaurant located in Mamaroneck and Commack, New York from approximately May 2002 to the present.

3.      When I worked for Charlie Brown's Restaurant, I worked as a bartender and as a server.

4.      As a bartender and as a server, I was entitled to receive a share of tips from the customers.

5.      At the end of my shift every day, I gave a percentage of my tips to the manager. The manager was supposed to distribute a percentage of these tips to other employees. On several occasions, the manager kept some of my tips for personal use or to pay restaurant expenses.

6.      When I worked for Charlie Brown's Restaurant, no more than 60 individuals also worked there.

7.      My co-workers' job duties were the same, or similar, to my job duties, up until 2009.

8.      I normally worked approximately 4 days a week, for approximately 8 to 12 hours per shift, including double shifts. At Charlie Brown's Restaurant, I am now paid a rate of $4.65 per hour for all hours that I worked, plus tips.

9.      I was usually paid by a payroll check.

10.     While working at Charlie Brown's in Commack, I was required to attend meetings approximately every 6 weeks, which lasted between 1 to 2 hours. I did not receive my hourly wages for these meetings.

11.     Corporate policy provided that Charlie Brown's employees be given a certain number of vacation days based on the number of hours worked.

12.     My lawyers have advised me that, under the law, my tips should not have been shared with managers and other employees who do not usually receive tips.

13.     My lawyers have advised me that, under the law, I should have been paid the minimum wage for all hours that I worked.

14.     My co-workers were also not paid the minimum wage for all hours worked, nor were they paid time and one-half their hourly wage for all hours they worked over forty hours in a week.  Managers also wrongly kept some of my co-workers' tips.

15.     I know that Charlie Brown's Restaurant did not pay my co-workers all of their wages because sometimes we would discuss and compare our wages to see if we were paid correctly.

16.     I sincerely hope that this Court allows Elizabeth Goff, Cassandra Greene and Martin Tello to represent my interests and the interests of my friends in this action.  These companies exploited me and my co-workers, and it is my hope that we will be permitted to recover wages that we are owed.

PATRICIA ROTELLI

Sworn to before me this
___ day of June 2010
_____
Notary Public

# EXHIBIT E

**AFFIDAVIT**

STATE OF NEW YORK      )
                       : ss.:
COUNTY OF NEW YORK  )

BRIDGET PERNICARO being duly sworn, says:

1.     I am a resident of Farmingville, New York and am over 18 years of age. I submit this affidavit in support of Plaintiffs' Motion for Class Certification.

2.     I have worked for Charlie Brown's Restaurant located in Holtsville, New York from approximately May 2006 to December 2009.

3.     When I worked for Charlie Brown's Restaurant, I worked as a Server.

4.     As a Server, I was entitled to receive a share of tips from the customers.

5.     At the end of my shift every day, I gave a percentage of my tips to the manager. The manager was supposed to distribute a percentage of these tips to other employees.

6.     When I worked for Charlie Brown's Restaurant, no less than 40 individuals also worked there.

7.     My co-workers' job duties were the same, or similar, to my job duties, up until 2009.

8.     I normally worked 5-6 days a week, for approximately 5 to 7 hours per shift. I would sometimes work double shifts.

9.     When I worked for Charlie Brown's Restaurant, I was paid a rate between $3.65 and $4.65 per hour for all hours that I worked, plus tips.

10.    I was usually paid by a payroll check.

11.    While working at Charlie Brown's I was required to attend meetings approximately every 6 weeks, which lasted between 1 to 2 hours. I did not receive my hourly wages for these meetings.

12.    Corporate policy provided that Charlie Brown's employees be given a certain number of vacation days based on the number of hours worked. My vacation time was often not given to me and I was not paid any wages for this lost vacation time.

13.    My lawyers have advised me that, under the law, my tips should not have been shared with managers and other employees who do not usually receive tips.

14.    My lawyers have advised me that, under the law, I should have been paid the minimum wage for all hours that I worked.

15.    My paystubs did not accurately reflect all of the hours that I worked in a week.

16.    My co-workers were also not paid the minimum wage for all hours worked, nor were they paid time and one-half their hourly wage for all hours they worked over forty hours in a week.  Managers also wrongly kept some of my co-workers' tips.

17.    I know that Charlie Brown's Restaurant did not pay my co-workers all of their wages because sometimes we would discuss and compare our wages to see if we were paid correctly.

18.    I sincerely hope that this Court allows Elizabeth Goff, Cassandra Greene and Martin Tello, to represent my interests and the interests of my friends in this action.  These companies exploited me and my co-workers, and it is my hope that we will be permitted to recover wages that we are owed.

BRIDGET PERNICARO

Sworn to before me this
___ day of June 2010

Notary Public

DOREEN E. BRUZGA
Notary Public - State of New York
No. 01BR4868033
Qualified In Suffolk County
My Commission Expires Aug 18, 2010

# EXHIBIT F

## AFFIDAVIT

STATE OF NEW YORK   )
                         : ss.:
COUNTY OF NEW YORK  )

CASSANDRA GREENE being duly sworn, says:

1.     I am a resident of Nesconset, New York and am over 18 years of age. I submit this affidavit in support of Plaintiffs' Motion for Class Certification.

2.     I have worked for and was paid by the Charlie Brown's Restaurant located in Holtsville and Commack, New York from approximately August 2008 to June 2010.

3.     When I worked for Charlie Brown's Restaurant, I worked as a Hostess.

4.     When I worked for Charlie Brown's Restaurant, no more than 80 individuals also worked there.

5.     My co-workers' job duties were the same, or similar, to my job duties.

6.     I normally worked 5-6 days a week, for approximately 6 to 8 hours per shift. I would sometimes work double shifts.

7.     When I worked for Charlie Brown's Restaurant, I was paid a rate of $8.50 to $10.00 per hour for all hours that I worked.

8.     I was usually paid by a payroll check.

9.     Sometimes my pay stubs would not reflect all the hours I worked. If I complained to the manager, the manager would give me a voucher showing the money I was owed. I would then exchange that voucher for cash. I was always paid my regular hourly rate for these missing hours.

10.     While working at Charlie Brown's I was required to attend meetings approximately every 6 weeks, which lasted between 1 to 2 hours. I did not receive my hourly wages for these meetings.

11.     My co-workers were also not paid the minimum wage for all hours worked, nor were they paid time and one-half their hourly wage for all hours they worked over forty hours in a week. Managers also wrongly kept some of my co-workers' tips.

12.     I know that Charlie Brown's Restaurant did not pay my co-workers all of their wages because sometimes we would discuss and compare our wages to see if we were paid correctly.

13.     I sincerely hope that this Court allows me, along with Elizabeth Goff and Martin
Tello, to represent my interests and the interests of my friends in this action.  These companies
exploited me and my co-workers, and it is my hope that we will be permitted to recover wages
that we are owed.

Cassandra Greene

Sworn to before me this
14th day of June 2010

Notary Public

LAURA BOVE
NOTARY PUBLIC STATE OF NEW YORK
NASSAU COUNTY, LIC. #01BO6196666
COMM. EXP. 11-16-2012

# EXHIBIT G

**AFFIDAVIT**

STATE OF NEW YORK    )
                     : ss.:

COUNTY OF NEW YORK  )

    MARTIN TELLO being duly sworn, says:

    1.    I am a resident of Long Branch, New Jersey and am over 18 years of age.  I submit this affidavit in support of Plaintiffs' Motion for Class Certification.

    2.    I worked for and was paid by the Charlie Brown's Restaurant located in Tappan, New Jersey from approximately October 2009 through April 2010.

    3.    When I worked for Charlie Brown's Restaurant, I worked as a salad maker.

    4.    As a salad maker, I did not receive tips from customers.

    5.    When I worked for Charlie Brown's Restaurant, no less than 35 individuals also worked there.

    6.    I normally worked 7 days a week.  I normally began work at 9 a.m. and stopped working at 11 p.m., or when the restaurant closed.

    7.    When I worked for Charlie Brown's Restaurant I was paid $10 per hour.

    8.    I was always paid by a payroll check, every two weeks. However, my payroll check did not accurately reflect all hours that I worked in any given two week period.

    9.    Each day I worked I clocked in at the beginning of the day and clocked out at the end. Even though I did this everyday that I worked, my paystubs still did not show all the hours that I worked during that period.

    10.    Charlie Brown's management posted various version of the weekly work schedule. None of these schedules actually reflected the hours that I worked. I often started work an hour earlier than the schedule indicated. I was also not permitted to take my scheduled breaks/meal times.

    11.    My lawyers have advised me that, under the law, I should have been paid overtime compensation at time and one-half my regular hourly rate for all hours I worked over 40 hours each week.

    12.    I was not paid overtime compensation at time and one-half my hourly rate for all the hours I worked over 40 hours each week.

    13.    My co-workers were also not paid time and one-half their hourly wage for all hours they worked over forty hours in a week.

14.     I know that Charlie Brown's Restaurant did not pay all of my co-workers their wages because sometimes we would discuss and compare our wages to see if we were paid correctly.

15.     I know that Charlie Brown's Restaurant did not pay all of its employees at other Charlie Brown's locations their wages because my co-workers told me they had friends and family who worked at these other locations and they were similarly not paid their proper overtime wages.

16.     Many of my co-workers are non-English speaking immigrants who did not know that they should have been paid these wages while working for Charlie Brown's Restaurant. Many of these workers may be afraid to pursue their claims on their own.

17.     I sincerely hope that this Court allows me, along with Cassandra Greene and Elizabeth Goff to represent my interests and the interests of my friends in this action. These companies exploited me and my co-workers, and it is my hope that we will be permitted to recover wages that we are owed.

18.     I have had this Affidavit translated into Spanish, and I understand its content._____

MARTIN TELLO

Sworn to before me this

14 day of June 2010

_____
Notary Public

**LEONOR HIDALGO COYLE**
**Notary Public- State of New York**
**No. 02CO6213934**
**Commission Expires November 23, 2013**

2

# EXHIBIT H

**AFFIDAVIT**

STATE OF NEW YORK )
                  : ss.:
COUNTY OF NEW YORK )

HECTOR DUARTES being duly sworn, says:

1. I am a resident of Tappan, New York and am over 18 years of age. I submit this affidavit in support of Plaintiffs' Motion for Class Certification.

2. I worked for and was paid by the Charlie Brown's Restaurant located in Tappan, New Jersey from approximately May 2009 through April 2010.

3. When I worked for Charlie Brown's Restaurant, I worked under the name Marcos Antonio Lopez.

4. When I worked for Charlie Brown's Restaurant, I worked as a salad maker.

5. As a salad maker, I did not receive tips from customers.

6. When I worked for Charlie Brown's Restaurant, no less than 35 individuals also worked there.

7. I normally worked 7 days a week. I normally began work at 9 a.m. and stopped working at 11 p.m., or when the restaurant closed.

8. When I worked for Charlie Brown's Restaurant I was paid $10 per hour.

9. I was always paid by a payroll check, every two weeks. However, my payroll check did not accurately reflect all hours that I worked in any given two week period.

10. Each day I worked I clocked in at the beginning of the day and clocked out at the end. Even though I did this everyday that I worked, my paystubs still did not show all the hours that I worked during that period.

11. Charlie Brown's management posted various version of the weekly work schedule. None of these schedules actually reflected the hours that I worked. I often started work an hour earlier than the schedule indicated. I was also not permitted to take my scheduled breaks/meal times.

12. My lawyers have advised me that, under the law, I should have been paid overtime compensation at time and one-half my regular hourly rate for all hours I worked over 40 hours each week.

13. I was not paid overtime compensation at time and one-half my hourly rate for all the hours I worked over 40 hours each week.

1

14.   My co-workers were also not paid time and one-half their hourly wage for all hours they worked over forty hours in a week.

15.   I know that Charlie Brown's Restaurant did not pay all of my co-workers their wages because sometimes we would discuss and compare our wages to see if we were paid correctly.

16.   I know that Charlie Brown's Restaurant did not pay all of its employees at other Charlie Brown's locations their wages because my co-workers told me they had friends and family who worked at these other locations and they were similarly not paid their proper overtime wages.

17.   Many of my co-workers are non-English speaking immigrants who did not know that they should have been paid these wages while working for Charlie Brown's Restaurant. Many of these workers may be afraid to pursue their claims on their own.

18.   I sincerely hope that this Court allows Martin Tello, Cassandra Greene and Elizabeth Goff to represent my interests and the interests of my friends in this action.  These companies exploited me and my co-workers, and it is my hope that we will be permitted to recover wages that we are owed.

19.   I have had this Affidavit translated into Spanish, and I understand its content._____

_Héctor Antonio cortes_

HECTOR DUARTES

Sworn to before me this

14 day of June 2010

_____

Notary Public

**LEONOR HIDALGO COYLE**
**Notary Public- State of New York**
**No. 02C06213934**
**Commission Expires November 23, 2013**

2

# EXHIBIT I

**TO BE CIRCULATED IN ENGLISH AND SPANISH**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CASSANDRA GREENE and ELIZABETH GOFF, individually and on behalf of all other persons similarly situated who were employed by C.B. HOLDING CORP. d/b/a CHARLIE BROWN'S STEAKHOUSE; CHARLIE BROWN'S ACQUISITION CORP.; CHARLIE BROWN'S OF COMMACK, LLC; CHARLIE BROWN'S OF HOLTSVILLE, LLC; and/or any other entities affiliated with or controlled by C.B. HOLDING CORP. d/b/a CHARLIE BROWN'S STEAKHOUSE; CHARLIE BROWN'S ACQUISITION CORP.; CHARLIE BROWN'S OF COMMACK, LLC; CHARLIE BROWN'S OF HOLTSVILLE, LLC, | Docket No.: 10 cv 1094 (JBW)(CLP) |

Plaintiffs,

- against -

C.B. HOLDING CORP. d/b/a CHARLIE BROWN'S STEAKHOUSE; CHARLIE BROWN'S ACQUISITION CORP.; CHARLIE BROWN'S OF COMMACK, LLC; CHARLIE BROWN'S OF HOLTSVILLE, LLC; and/or any other entities affiliated with or controlled by C.B. HOLDING CORP. d/b/a CHARLIE BROWN'S STEAKHOUSE; CHARLIE BROWN'S ACQUISITION CORP.; CHARLIE BROWN'S OF COMMACK, LLC; CHARLIE BROWN'S OF HOLTSVILLE, LLC; and SAMUEL BORGESE,

Defendants.

NOTICE OF PENDENCY

IMPORTANT NOTICE
ADVISING YOU OF YOUR LEGAL
RIGHTS

TO:   All individuals who furnished labor to C.B. HOLDING CORP d/b/a CHARLIE BROWN'S STEAKHOUSE, CHARLIE BROWN ACQUISITION CORP., CHARLIE BROWN'S OF COMMACK, LLC, CHARLIE BROWN OF HOLTSVILLE, LLC, (Collectively "CHARLIE BROWN'S STEAKHOUSE") and SAMUEL BORGESE commencing on or after March 1, 2007 (the "Class" and individually the "Class Member(s)"). Supervisors, officers, executive, managerial or administrative personnel are not part of the defined class.

If you worked for CHARLIE BROWN'S STEAKHOUSE at any time since March 1, 2007 the purpose of this Notice is to advise you of this class action lawsuit, and to further advise you of certain rights you may have with respect to this action.

Plaintiffs CASSANDRA GREENE, ELIZABETH GOFF, AND MARTIN TELLO ("Class Representatives") are former and current employees of CHARLIE BROWN'S STEAKHOUSE who have brought this action on behalf of all other current and former CHARLIE BROWN'S STEAKHOUSE employees to recover unpaid minimum wages and overtime compensation (for all hours worked in excess of 40 per week) and improperly withheld wages and tips, for which they have been incorrectly paid.

Defendants vigorously deny any wrongdoing and/or liability to plaintiffs or any other past or present employee of CHARLIE BROWN'S STEAKHOUSE who may allege that he or she was underpaid. CHARLIE BROWN'S STEAKHOUSE strongly deny that any employee was underpaid for his or her work at any time.

This lawsuit seeks the payment of minimum wages, overtime wages and improperly withheld tips and gratuities pursuant to the Fair Labor Standards Act (29 U.S.C. 201 et seq.), New York State Labor Law, New Jersey State labor law, and Pennsylvania State labor law, allegedly owed to current and former employees of the above defendants who worked as wait staff, hosts(esses), bartenders, salad makers, dishwashers, and other restaurant related tasks.

You may be owed payment if you worked for CHARLIE BROWN'S STEAKHOUSE and received less than the minimum wage for all hours worked, even if you are an employee that received tips, if a percentage of your tips were improperly retained by CHARLIE BROWN'S STEAKHOUSE. You also may be owed payment if you attended staff meetings without receiving the minimum wage. Lastly, you may be owed payment if you worked for CHARLIE BROWN'S STEAKHOUSE for more than 40 hours per week and you were not paid overtime at time and one-half (1.5x) your normal hourly rate of pay for all hours actually worked over forty (40) hours each week;

**This Notice is meant to advise you of your right to participate in this lawsuit as a claimant and plaintiff under the Fair Labor Standards Act if you believe that you were underpaid by CHARLIE BROWN'S STEAKHOUSE.**

**No determination has been made that you are owed any minimum wages, overtime wages or gratuities, and the Court is not endorsing the merits of this lawsuit or advising you to participate in this lawsuit. You are under no obligation to respond to this notice.**

\*            \*            \*

### FEDERAL LAW CLAIMS

If you worked for CHARLIE BROWN'S STEAKHOUSE between 2007 and 2010, you may be entitled to certain protection under the Federal Fair Labor Standards Act for all hours that you received less than the minimum wage for all hours worked. You may be entitled to these protections even if you are an employee that received tips, if a percentage of your tips were improperly retained by CHARLIE BROWN'S STEAKHOUSE. You may also be entitled to these protections if you were not paid the minimum wage for all hours you attended staff

meetings. You may also be entitled to certain protection under the Federal Fair Labor Standard Act for all work performed in excess of 40 hours each week when you may not have been paid one and one-half times (1.5x) your regular hourly wage rate.

If you wish to participate in this portion of the lawsuit, you must have the enclosed written "Consent to Join Lawsuit" Form filed with the Clerk of the Court. If you do not sign and mail the "Consent to Join Lawsuit" form to the address listed below, you will not be permitted to seek recovery of unpaid wages under the Fair Labor Standards Act in this case.

## NEW YORK LAW CLAIMS

A class has not yet been certified for claims arising under New York law.  Under New York law, you may have claims for improperly withheld tips and gratuities, minimum wages, and overtime compensation (work performed over 40 hours) that date back to 2004.  You will be advised of any additional rights that you may have to recover under New York law in the event that a class is certified by this Court.

## NEW JERSEY LAW CLAIMS

A class has not yet been certified for claims arising under New Jersey law.  Under New Jersey law, you may have claims for minimum wages and overtime compensation (work performed over 40 hours) that date back to 2007.  You will be advised of any additional rights that you may have to recover under New Jersey law in the event that a class is certified by this Court.

## PENNSYLVANIA LAW CLAIMS

A class has not yet been certified for claims arising under Pennsylvania law.  Under Pennsylvania law, you may have claims for minimum wages and overtime compensation (work performed over 40 hours) that date back to 2007.  You will be advised of any additional rights that you may have to recover under Pennsylvania law in the event that a class is certified by this Court.

## FILING THE CONSENT TO JOINDER FORM

If you wish to participate in the portion of this lawsuit that seeks payment of improperly withheld tips and gratuities, minimum wages, and overtime wages under the Fair Labor Standards Act, you must sign and return the enclosed yellow Consent to Joinder as directed below.  Your consent to Join Lawsuit Form will be filed with the Clerk of the Court on your behalf.  If you fail to mail a signed Consent to Joinder form to the Clerk of the Court you will not be eligible to participate in the FLSA portion of this lawsuit. Consent to Joinder forms filed after _____2010 will be rejected unless good cause is shown for the delay.

THE LAST DAY TO FILE THE YELLOW
CONSENT TO JOIN LAWSUIT FORM IS
_____2010

IF YOU WISH TO FILE A CLAIM FOR IMPROPERLY WITHELD TIPS, UNPAID MINIMUM WAGES, AND UNPAID OVERTIME PAY UNDER THE FEDERAL FAIR LABOR STANDARDS ACT, YOU MUST MAIL THE ENCLOSED CONSENT TO JOINDER FORM POSTMARKED BY _____2010 TO:

LLOYD AMBINDER, ESQ.
VIRGINIA & AMBINDER, LLP
111 BROADWAY, ROOM 1403
NEW YORK, N.Y. 10006
RE: CHARLIE BROWN'S STEAKHOUSE

If you fail to mail a signed Consent to Join Lawsuit form you may not be eligible to participate in the FLSA portion of this lawsuit.

Lloyd Ambinder, Esq., of Virginia & Ambinder, LLP, located at 111 Broadway, Suite 1403, New York, New York 10006, telephone number (212) 943-9080, facsimile number (212) 943-9082 along with Jeffrey K. Brown, Esq., of Leeds, Morelli & Brown, P.C., located at One Old Country Road, Suite 347, Carle Place, New York 11514, telephone number (516) 873-9550, facsimile number (516) 747-5024 represent the plaintiffs in this case. You will not be required to pay any fee for services provided by plaintiffs' counsel Virginia & Ambinder, LLP and Leeds, Morelli & Brown, P.C. If you are represented by plaintiffs' attorneys, their costs and fees will be paid out of any recovery against CHARLIE BROWN'S STEAKHOUSE.  You have a right to consult with an attorney about this matter. If you wish to be represented by other counsel, you may retain another attorney, but you will be responsible for paying that attorney. Further information about this Notice, the deadline for joining the lawsuit, the form provided or answers to other questions concerning this lawsuit may be obtained by contacting the plaintiffs' attorney Lloyd Ambinder, Esq., telephone number (212) 943-9080, facsimile number (212) 943-9082. If you require Spanish translation, please ask for Yeskenia Polanco, or Polish translation, please ask for Maria Tokarz or Iwona Ner.

***You have a right to participate in this action even if you are an undocumented alien or if you were paid in cash.***

# PLEASE DO NOT CONTACT THE CLERK OF THE COURT WITH QUESTIONS INVOLVING THIS LAWSUIT.

SO ORDERED:

_____U.S.D.J.

Dated: New York, New York
        June ____, 2010

# EXHIBIT J

**TO BE CIRCULATED IN ENGLISH AND SPANISH**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CASSANDRA GREENE and ELIZABETH GOFF, individually and on behalf of all other persons similarly situated who were employed by C.B. HOLDING CORP. d/b/a CHARLIE BROWN'S STEAKHOUSE; CHARLIE BROWN'S ACQUISITION CORP.; CHARLIE BROWN'S OF COMMACK, LLC; CHARLIE BROWN'S OF HOLTSVILLE, LLC; and/or any other entities affiliated with or controlled by C.B. HOLDING CORP. d/b/a CHARLIE BROWN'S STEAKHOUSE; CHARLIE BROWN'S ACQUISITION CORP.; CHARLIE BROWN'S OF COMMACK, LLC; CHARLIE BROWN'S OF HOLTSVILLE, LLC,

Docket No.: 10 cv 1094 (JBW)(CLP)

CONSENT TO JOINDER

Plaintiffs,

- against -

C.B. HOLDING CORP. d/b/a CHARLIE BROWN'S STEAKHOUSE; CHARLIE BROWN'S ACQUISITION CORP.; CHARLIE BROWN'S OF COMMACK, LLC; CHARLIE BROWN'S OF HOLTSVILLE, LLC; and/or any other entities affiliated with or controlled by C.B. HOLDING CORP. d/b/a CHARLIE BROWN'S STEAKHOUSE; CHARLIE BROWN'S ACQUISITION CORP.; CHARLIE BROWN'S OF COMMACK, LLC; CHARLIE BROWN'S OF HOLTSVILLE, LLC; and SAMUEL BORGESE,

Defendants.

By signing below I, _____ (Print Name), consent

to become a party plaintiff in this lawsuit.

Signature: _____ Print Name: _____

Address: _____

Zip Code: _____ Apt._____ Phone Number: (____)_____

E-mail:_____@_____._____

**THE LAST DAY TO FILE THIS CONSENT TO JOINDER FORM IS _____**

*CONSENT TO JOINDER FORMS FILED <u>AFTER</u> _____ WILL BE REJECTED*
*UNLESS GOOD CAUSE IS SHOWN FOR THE DELAY*

**IF YOU WISH TO SEEK RECOVERY OF UNPAID OVERTIME UNDER THE
FEDERAL FAIR LABOR STANDARDS ACT, YOU MUST MAIL THE ENCLOSED
CONSENT TO JOINDER FORM POSTMARKED BY _____ 2010 TO:**

**LLOYD AMBINDER, ESQ.
VIRGINIA & AMBINDER, LLP
111 BROADWAY, ROOM 1403
NEW YORK, N.Y. 10006
RE: CHARLIE BROWN'S STEAKHOUSE**

If you fail to mail a signed Consent to Joinder form by _____ 2010, you may not be
eligible to participate in the FLSA portion of this lawsuit.